MICHAEL LEE STROPE,
also known as
GORDON STROPE,

       Plaintiff,

                          CIVIL ACTION
    vs.                        No. 07-3254-SAC

SAM CLINE, et al.,

          Defendants.

## MEMORANDUM AND ORDER

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc.  Plaintiff, a prisoner in state custody, proceeds pro se and in forma pauperis.  All claims in this matter arose during the plaintiff's confinement at the Hutchinson Correctional Facility during 2007.

Defendants Cline, Werholtz, Ferris, Rice, and Fischli have filed a motion for summary judgment (Doc. 55).

**Background**

Plaintiff's claims may be categorized as follows:

I. **Conditions of confinement**. Plaintiff claims defendants served spoiled food to prisoners on the common fare diet, served meals on dirty trays, and treated prisoners on the common fare diet differently from those receiving the regular diet. (Counts 1, 8, 9, 10, and 14.) He claims he receives an inadequate supply of new clothing (Count 11). Finally, he claims that during July and August 2007, defendant Cline caused him to be subjected to excessive heat (Count 12).

In Count 1, plaintiff claims defendant Cline, the warden, violated his Eighth Amendment rights by deliberate indifference to the service of an "unbalanced and unhealthy diet" provided in the common fare diet. He claims food items were spoiled, that menu items were omitted and not replaced, and that this resulted in a diet of 1500-1700 calories per day for prisoners receiving that diet. Plaintiff also complains in Count 1 that defendant Cline allowed disparity between the regular line diet and the common fare diet by refusing to investigate plaintiff's emergency grievance filed on July 4, 2007.

In Count 8, plaintiff claims defendant Rice violated his constitutional rights by refusing to take corrective action concerning the religious diet and by imposing a substantial burden on those prisoners receiving the religious diet by removing beef from the diet, by reducing portions, and by

serving food on dirty trays.

In Count 9, plaintiff claims defendant Rice violated his rights under the RLUIPA by serving spoiled foods, denying a balanced diet, removing beef from the menu, using dirty trays for meal service, serving the same foods repeatedly while reducing portions, and by harassing those receiving the common fare diet.

In Count 10, plaintiff alleges defendant Fischli violated his constitutional rights and the RLUIPA by conspiring to remove beef from the common fare diet and to remove tomatoes and cucumbers from the menu, by serving peanut butter frequently, and by reducing portions to cause prisoners to abandon the diet.

In Count 14, plaintiff claims defendant Werholtz violated his constitutional rights and the RLUIPA by denying prisoners a balanced religious diet, by imposing a substantial burden on prisoners who receive a religious diet by removing beef from the menu, by denying adequate amounts of food, and by retaliating against prisoners who complain about the religious diet.

**Clothing**

In Count 11, plaintiff claims defendant Cline and the laundry supervisor violated his rights by providing him with inadequate new clothing each year.

**Excessive heat**

In Count 12, plaintiff claims defendant Cline violated his rights by providing an excessively hot living area in the months of July and August 2007.

II. **Money order.** Plaintiff claims defendants engaged in theft, embezzlement, and racketeering by seizing a $50.00 money order.

III. **Grievances and retaliation.** Plaintiff claims defendants failed to investigate his grievances, conspired to retaliate against him, and retaliated for his use of the grievance procedure.

**Factual background**

During the time relevant to the claims in this matter, plaintiff was a prisoner at the Hutchinson Correctional Facility (HCF), Hutchinson, Kansas. Defendant Sam Cline became the warden in June 2007. Defendant Roger Werholtz was the Secretary of the Kansas Department of Corrections, defendant David Ferris was the business manager of the Lansing Correctional Facility, and defendants Elizabeth Rice and Colene Fischli were designees of the Secretary whose duties included preparing responses to inmate grievances.

*Conditions of confinement*

On March 17, 2007, plaintiff filed grievance BB00014414, claiming that ARAMARK, the food service contractor, violated his rights by "ongoing filthy violations and servings of spoiled

foods", that defendant Rice violated his rights by "rubber-stamping grievances and refusing corrective actions to the religious diet prisoners, and religious persecutions...." He claimed prisoners received spoiled lettuce on their supper trays on that day and that prisoners were served from "nasty trays" at lunch on one day. (Doc. 35, Ex. 14.)

On March 27, 2007, ARAMARK provided a response to Corrections Counselor Warner denying any attempt to interfere with protected rights, stating it had served lettuce at lunch on March 17 and had not received complaints and that the lettuce served for supper was prepared at the same time, and that no complaints were received from other inmates concerning the issues, nor had any prisoner requested a replacement item of any food.

Former warden Bruce and defendant Rice reviewed the response and found no error.

On May 20, 2007, plaintiff filed grievance BB00014566, claiming defendants Werholtz, Fischli, and others violated his rights and the RLUIPA by conspiring to violate his rights "by removing all beef meals from the menu, all tomatoes, and cucumbers from the menu, and serving peanut butter every other day, and cutting portions in half to run prisoners off the diet, this does not occur on regular line and is also a disparity in

treatments." (Doc. 1, Ex. 22).

ARAMARK staff provided a response stating the certified religious diet menu had been updated some months earlier, and that ARAMARK had followed that menu. (Doc. 35, Ex. 19, p. 5.)

Former Warden Bruce responded on June 12, 2007, stating that the "Common Fare diet has been approved and used by the Bureau of Prisons as well as approved by the State Dietitian. These issues have been appropriately addressed to you in previous grievance responses...." (Doc. 1, Ex. 23).

On June 21, 2007, defendant Rice responded to grievance BB00014566 and stated the facility response was appropriate. (Doc. 1, Ex. 24).

On March 29, 2007, plaintiff submitted grievance BB00014429 claiming defendants Werholtz, Rice, and others violated his rights and the RLUIPA by denying him a balanced diet by "removing all beef meals off the menu, religious persecutions for exercising our religious rights, depriving proper amounts of food, and retaliation". He cited service of outdated, spoiled foods, removal of meat from the menu, splitting service portions, and use of foods such as powdered eggs. (Doc. 1, Ex. 9).

ARAMARK provided a response stating plaintiff had not identified specific instances of spoiled food being served, denying that it split portions or used powdered eggs, explaining

the portions of peanut butter and jelly were provided according to the menu, and stating it had received no other complaints. ARAMARK also stated it prepared fruits and vegetables daily to ensure freshness, and that it followed the menu. (Doc. 1, Ex. 10).

Former Warden Bruce and defendant Fischli concluded the response was appropriate. (Doc. 1, Exs. 11 and 12).

Plaintiff filed grievance BB00014639 claiming a correctional officer not named in this action violated his rights and the RLUIPA by harassment and retaliation against prisoners on the common fare diet. (Doc. 1, Exs. 32 and 33). Corrections Counselor Warner responded on June 27, 200, stating that officers have the authority to search prisoners when they believe contraband may be hidden or to conduct random searches, and that some prisoners receiving the common fare diet had been smuggling food out of the dining area. The response also noted that searches also were being performed on prisoners receiving the regular diet. (Doc. 35, Ex. 22).

On July 10, 2007, defendant Cline responded, stating the information provided by the earlier response was correct, and advising plaintiff that all inmates are subject to search at any time. (Doc. 1, Ex. 34). Defendant Rice responded on July 16, 2007, finding the response was appropriate. (Doc. 1, Ex. 35).

The common fare menu is approved by a state dietitian. Where food substitutions were necessary, the replacement items were comparable in nutritional value and calories. There was no reason to suggest plaintiff was served food that was spoiled or not properly cooked or that utensils used were not appropriate. (Doc. 35, Ex. 3, Affidavit of Rusty Anderson at 2-3).

Defendant Cline denies intentionally subjecting plaintiff to uncomfortable or unsanitary conditions or any deliberate indifference to plaintiff's serious medical needs. (Doc. 35, Ex. 2 at 4).

Defendant Rice denies any intentional interference with plaintiff's legal or constitutional rights and denies "rubber-stamping" responses to his grievances. As a designee of the Secretary, she receives a copy of the initial grievance and all responses to it. If the responses are appropriate, no additional investigation is conducted. However, if the inmate supplies new information, she reviews that before preparing a response. (Doc. 35, Ex. 6, Affidavit of Elizabeth Rice, at 1-2).

Defendant Rice advised plaintiff to seek immediate replacement of a food item he finds unsatisfactory so that the quality and condition of the food can be established. (Id. at 2-3).

Defendant Fischli denies intentional interference with

plaintiff's protected rights and denies that she would "rubberstamp" responses to grievances. (Doc. 35, Ex. 7 at 1-2).

Defendant Werholtz was unaware of plaintiff's complaints and had no involvement in plaintiff's particular conditions of confinement. Grievance responses are prepared by his designee. Defendant Werholtz denies that he engaged in a conspiracy involving plaintiff or that he violated any of plaintiff's rights. (Doc. 35, Ex. 8, Affidavit of Roger Werholtz, at 1-2).

Defendant Cline periodically visits the food service areas in the HCF. He did not see the conditions of which plaintiff complains. He directed a number of officers and food service personnel to investigate plaintiff's claims but found no support for them. (Doc. 35, Ex. 2 at 2).

Food service at the HCF is managed by ARAMARK, a private corporation. (Doc. 35, Ex. 3 at 1). There are approximately 1,600 prisoners at HCF, and plaintiff alone complains nearly every day about the food provided. (Doc. 35, Ex. 2 at 2).

**Clothing**

Plaintiff claims defendant Cline violated his rights by failing to provide adequate clothing. He receives one tee shirt, one pair of boxers, and two pairs of socks every four months, but he claims he should be provided new underclothing every three months. He claims he must wash his underclothing at

night due to inadequate clothing, and he states he developed a rash on his legs due to denim pants rubbing his legs in excessive heat. (Doc. 1 at 16).

On July 25, 2007, plaintiff filed grievance BB00014749 concerning the limited clothing allotment. His Unit Team Manager provided the following response:

> Per IMPP 12-129 in the event that the budget appropriation is insufficient to enable the purchase of clothing in the quantities upon which the budget request was made, wardens may reduce the quantity of clothing purchased accordingly. Based upon budget issues over the past two years Warden Bruce reduced the issuance of clothing to three times per year. Keep in mind regardless of the issuance you may maintain up to seven (7) sets of under garments. (Doc. 35, Ex. 27 at 6).

HCF General Order 12-105.IX, as supplemented March 31, 2006, provided that inmates were to receive new underwear every four months and allowed inmates to retain a total of seven tee shirts, seven pairs of shorts, and seven pairs of socks. Subject to that limit and to availability, used clothing could be requested from the facility laundry. (Doc. 35, Ex. 2 at 3).

On August 13, 2007, defendant Cline responded to the grievance, stating his support for the response of the Unit Team and explaining the reduction in issuance of undergarments from four to three times per year was due to budget constraints (Doc 1, Ex. 56). Defendant Rice issued a response finding the

response from facility staff was appropriate. (Doc. 1, Ex. 57).

The reduction in new clothing was a policy adopted by Warden Bruce and took place before defendant Cline was employed at the HCF. Defendant Cline denies he was deliberately indifferent to plaintiff's serious health and sanitation needs (Doc. 35, Ex. 2 at 3).

**Excessive heat**

Plaintiff claims defendant Cline violated his rights by "creating a living area that contains excessive heat...throughout the months of July and August 2007", that he was unable to sleep at night due to the heat, and that only one window opens. (Doc. 1 at 16).

On August 10, 2007, plaintiff filed grievance BB00014770 alleging defendant Cline had violated his rights by subjecting him to excessive heat in his living area. He stated defendant Cline should "re-adjust the timers where the fans come on at 7:00 p.m. or earlier, it does no good to run them in the morning when everyone is at work." (Doc. 1, Ex. 58).

On August 17, 2007, Corrections Counselor Barr provided a response stating:

> I have confirmed with the east unit maintenance department and understand each living unit has an exhaust fan that runs 24/7 and the living unit ceiling fan run 24/7 as well. The exhaust fan you refer to on Second Street is designed to remove excess heat from

the living units and replace that air with outside
air. This fan is set to come on when the temperature
outside the building is cooler than inside. Running
the exhaust fan when the temperature outside is above
the inside temperature would only increase the
temperature inside the living units and be counter
productive. (Doc. 1, Ex. 59).

Defendant Cline issued a response on August 23, 2007,
finding the response was appropriate (Doc. 1, Ex. 60), and
defendant Rice issued a response on September 24, 2007,
concurring that response (Doc. 1, Ex. 61).

During the summer, living unit fans run continually, and
inmates are allowed to have small personal fans. Both the
exhaust fans and air circulation fans were in working order.
Defendant Cline was not aware of any serious health concerns
plaintiff or any other prisoner suffered related to his clothing
or the heat. (Doc. 35, Ex. 2 at 4).

*Money order*

Plaintiff claims defendants Ferris and Cline violated his
rights and the RICO Act by seizing a money order sent to him in
early June 2007. He characterizes this action as "theft, fraud,
and embezzlement". (Doc. 1 at 13 and 17).

On June 11, 2007, plaintiff filed grievance BB00014640
claiming defendant Werholtz and "all accounting staff" violated
his rights. He also claimed these persons were retaliating
against him for filing complaints and that a Unit Team Manager

12

had failed to properly investigate his claim concerning the HCF financial accounting office.

On June 21, 2007, Corrections Counselor Warner provided the following response:

> In checking your financial records I see that the money orders have been placed in your account. When you approached Mr. Warner about your money orders he called accounting on two separate occasions on your behalf and told you that they would be placed in your account but that you had not allowed enough time for them to be processed. This proved to be true as they are now in your account. (Doc. 35, Ex. 20 at 6).

On July 10, 2007, defendant Cline responded, stating that Counselor Warner had provided an appropriate response and stating, "I have reviewed your account and see that you have been making regular transactions. Incoming funds have also been credited to your account." (Doc. 1, Ex. 27). Defendant Rice found the responses given were appropriate. (Doc. 1, Ex. 28).

On June 26, 2007, plaintiff filed grievance BA00014670, claiming defendants Werholtz and Ferris and others had violated his rights by seizing a money order. He again alleged theft, fraud, and racketeering and asserted "prison staff kept [his] money for their use and refused to make my court payment and process my paper order, yet said the money is put in my mandatory savings where only they have access to it." He claimed the money order was sent prior to the implementation of the new

policy concerning mandatory savings accounts. (Doc. 1, Exs. 36 and 37).

> Corrections Counselor Warner responded:
>
> The money order that was sent into you was incomplete because it did not have the city, state, and zip code of the sender. IMPP 4-103 states the full sender's name and address must be on the money order to be placed in your cash account. If the information is not complete then the money order is to be placed in your savings account. This policy did not just take effect on June 6, 2007 but has been the DOC policy since before that date. (Doc. 35, Ex. 23 at 6).
>
> On July 12, 2007, defendant Cline responded:
>
> I have reviewed the Unit Team's response and investigated your claim. Per IMPP 04-103 an incoming money order must have both a return address and the sender's name on either the money order or the deposit coupon. If both the sender's name and the address are not present, the entire money order shall be posted to the inmate's forced savings account. This policy was in effect prior to Centralized Banking.... Your request for relief is denied as LCF is following policy.... Your request for $2,500.00 in damages is denied as well. From 5/15/07 through 7/28/07 you had sufficient funds in your account to purchase periodicals and make a $10.00 legal payment.... (Doc. 1, Ex. 38).

Defendant Rice determined this response was appropriate. (Doc. 1, Ex. 39).

Defendant Ferris administers the Department of Corrections' centralized banking program under which all inmate funds are processed through the Lansing Correctional Facility. Defendant Ferris did not receive the grievances prepared by plaintiff.

(Doc. 35, Ex. 5, Affidavit of Ferris, at 1).

Defendant Werholtz denies that he conspired or otherwise acted in a manner intended to violate plaintiff's rights. (Doc. 35, Ex. 8 at 2).

## Discussion

### Standard for summary judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir. 1993). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex*, 477 U.S. at 324.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)(citations omitted).

The court must construe the record in the light most favorable to the party opposing a motion for summary judgment; however, that party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**Analysis**

**I. Diet (Counts 1, 8, 9, 10, and 14)**

Plaintiff challenges the diet provided under the First Amendment, the Eighth Amendment, and the RLUIPA.

He claims defendants Werholtz and Fischli violated his rights by denying him an adequate diet, removing beef, tomatoes, and cucumbers from the common fare diet, by serving peanut butter frequently, and by reducing portions.

To establish a free exercise violation, a prisoner must show that a defendant's actions substantially burdened the practice of his religion without any justification reasonably

16

related to a legitimate penological interest. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). A substantial burden is "one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Worthen v. Oklahoma Dept. of Corrections,* 2009 WL 88555 (W.D.Okla. Jan.12, 2009)(citations and quotations omitted).

A prisoner's right to free exercise includes the right to a diet that conforms with the prisoner's religious beliefs. *See Beerheide v. Suthers,* 286 F.3d 1179, 1185 (10th Cir. 2002). However, it is "axiomatic that the free exercise clause of the first amendment does not offer its protections to mere personal preferences." *Africa v. State of Pennsylvania,* 520 F.Supp. 967, 971 (E.D.Pa. 1981), *aff'd,* 662 F.2d 1025, *cert. denied,* 456 U.S. 908 (1982).

Because plaintiff has expressed no religious necessity for the foods omitted from the diet, namely, beef, tomatoes, and cucumbers, he states no claim for relief. Likewise, his claims concerning the frequent serving of peanut butter, the repetition of food items in the menu, the provision of an unbalanced diet, and the alleged reduction in portions suggest no more than personal dissatisfaction rather than any substantial burden on his religious exercise. Plaintiff has not shown the diet offered has impaired his health, while defendants have shown the

diet is approved by a state dietitian and is used in the federal correctional system. There is no evidence that reasonably suggests a triable issue of fact exists on a claim that plaintiff's right of free exercise was substantially burdened by the diet provided.

Likewise, to the extent plaintiff alleges the diet provided violated the RLUIPA, he must show that the defendants' actions created a substantial burden upon his religious observance. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312-15 (10th Cir. 2010).

In *Abdulhaseeb*, the Tenth Circuit identified three types of government action which might impose a substantial burden upon a prisoner's religious exercise: first, by requiring participation in an activity prohibited by the individual's religious beliefs; second, by preventing the prisoner from participating in an activity motivated by the prisoner's religious beliefs; and third, by leaving the prisoner no genuine choice from a course of conduct that impinges a religious belief. 600 F.3d at 1315.

Here, plaintiff's complaints concerning the diet do not suggest that he suffered more than displeasure with the food provided. While plaintiff has broadly alleged that he was served an unbalanced diet, that items were spoiled, and that trays were sometimes not clean, and that portions were inade-

quate, he has not identified any evidence that would support these allegations. The plaintiff has not alleged any illness or loss of weight occasioned by the diet offered, nor is there any showing that his complaint concerning the omission of some foods from the diet is more than a personal preference for a diet that includes those choices. It appears both that food service workers prepare produce on the day it is served to assure its quality, and that plaintiff has been counseled on the need to immediately address a complaint concerning spoiled food but has failed to do so. Plaintiff's claims under the RLUIPA cannot withstand the motion for summary judgment.

Plaintiff also claims the diet provided violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment and requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care and [] take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)(internal quotation marks and citation omitted). Only a significant deprivation of food gives rise to a claim under the Eighth Amendment. *Thompson v. Gibson,* 289 F.3d 1218, 1222 (10th Cir. 2002).

A claim under the Eighth Amendment involves both objective and subjective components. First, to satisfy the objective

component, the injury caused must be sufficiently serious to show a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. Next, to meet the subjective criterion, the defendant must have a "sufficiently culpable state of mind." *Id*. at 834.

Plaintiff's allegations here are insufficient to state a claim under the Eighth Amendment, as the record shows no more than bare claims that the diet provided was unhealthy or inadequate. Because there is no evidence that plaintiff suffered any physical harm whatsoever from the amount or type of food offered, there is no genuine issue concerning the nutritional adequacy of the diet.

Plaintiff also presents equal protection claims, asserting he was subjected to disparate treatment because the common fare menu he consumes does not include some foods provided to those receiving the regular diet line and because prisoners on the common fare diet line were subjected to illegal pat-down searches.

The equal protection doctrine "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). To state an equal protection claim, plaintiff must allege that the defendants either denied him a fundamental right or provided differential treatment based on a suspect classifi-

cation. *Brown v. Zavaras,* 63 F.3d 967, 971 (10th Cir. 1995). Plaintiff fails to made this showing. His bare allegation that some foods are not common to both diet lines does not reasonably suggest an incursion on his protected rights. Likewise, plaintiff has not effectively controverted the explanation that the searches in question were not performed exclusively on inmates receiving the common fare diet, but rather were conducted on inmates from both the regular diet line and the common fare diet line in response to food smuggling among the inmate population.[1]

Finally, to the extent plaintiff claims the defendants failed to investigate his complaints concern food service, conspired to deny his rights by modifying the diet to remove beef, tomatoes, and cucumbers, or that the diet provided was somehow retaliatory, the court rejects these claims as entirely unsupported.

The grievance responses contained in the record and the affidavits supporting the *Martinez* report show that plaintiff's complaints were considered and that he has been instructed on how to most effectively present his complaints concerning the food supplied. Plaintiff's claim of conspiracy concerning the

---

[1]*See* Doc. 35, Ex. 22.

diet provided fails because it lacks any factual support. *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)(conclusory assertion of conspiracy is insufficient to state claim under §1983).

Last, the fact that defendant Rice did not provide a detailed grievance response in many cases does not state a constitutional claim. Plaintiff has no constitutional right to a prison grievance procedure. *See Walters v. Corrections Corp. of America,* 119 Fed.Appx. 190, 191 (10th Cir. 2004)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.")(citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991)), *cert. denied,* 546 U .S. 865 (2005); *see also Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009)(claim that defendants "rubber-stamped" a prisoner's grievances did not adequately allege an affirmative link between the defendants and alleged constitutional violation).

## II. Clothing (Count 11)

Plaintiff claims his right under the Eighth Amendment was denied by a failure to provide him with adequate clothing. Every four months, plaintiff receives one new tee shirt, one

pair of boxer shorts, and two pairs of socks; however, he believes he is constitutionally entitled to receive these items every three months as was the earlier practice.

As noted, the Eight Amendment requires that prisoner officials provide inmates with adequate clothing. *Farmer*, 511 U.S. at 832. Plaintiff must satisfy both the objective and subjective components of a claim under the Eighth Amendment by showing both a substantial risk of serious harm and deliberate indifference to his welfare. *Id*. at 834.

Plaintiff fails to allege a viable claim. The decision to reduce the distribution of new undergarments to three times a year in response to budget constraints does not present a risk of serious harm; it is uncontested that plaintiff may request used clothing from the prison laundry and that he may retain a total of seven sets of unclothing. Likewise, he does not present an arguable assertion of deliberate indifference. It is apparent that officials have continued to supply new clothing to prisoners and that prisoners have access to used clothing at all times.

**III. Excessive heat (Count 12).**

Plaintiff claims defendant Cline violated the Eighth Amendment by actions that caused excessive heat in plaintiff's living area during July and August 2007. Plaintiff's grievance

23

concerning the heat requested that the fans in the area be timed to come on at 7 p.m. or earlier, and he complained he was unable to sleep due to the heat.

The responses prepared advised plaintiff that each living unit contains an exhaust fan and a living unit ceiling fan that run continually and that the exhaust fan is designed to remove heat from the unit. In addition, prisoners are permitted to have personal fans.

The Eighth Amendment requires prison officials to provide prisoners with humane conditions of confinement, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and "a state must provide within [a prison] living space reasonably adequate ventilation." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). However, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher,* 143 F.3d 1299, 1311 (10th Cir. 1998)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 349 (1981)). Therefore, to state a claim for relief, "a prisoner must show that conditions were more than uncomfortable, and indeed rose to the level of 'conditions posing a substantial risk of serious harm to inmate health or safety.'" *DeSpain v. Uphoff,* 264 F.3d 965, 973 (10th Cir. 2001)(quoting *Farmer,* 511 U.S. at 834).

The record in the present case does not support such a

claim.  While the temperatures in plaintiff's living area no doubt were uncomfortably hot during the period in question, it is clear that the prison uses fans to cool and circulate the air and that prisoners may purchase additional fans for their sleeping area.  This does not suggest either that a substantial risk of serious harm exists or that authorities have shown deliberate indifference to such a condition.  *See Strope v. Sebelius*, 189 Fed. Appx. 763 at *2 (10th Cir. 2006)(affirming summary dismissal of Eighth Amendment claim that prison lacked adequate ventilation to counter excessive heat and that prisoner was unable to sleep due to high temperatures).

**IV. Seizure of money order (Counts 7 and 13)**

Plaintiff alleges he was denied due process by the seizure of a $50.00 money order sent to him.  He also generally alleges racketeering, theft, fraud, and embezzlement.

The record shows the proceeds from the money order were placed in plaintiff's mandatory savings account because it did not bear the sender's name and address.  This action complies with Internal Management Policy and Procedure (IMPP) 4-103, V., E, which provides:

> Any incoming money order must have both a return address and the sender's name on either the money order or the deposit coupon.  If both the sender's name and the address are not present, the entire money order shall be posted in the inmate's forced savings

account.

A prisoner's claim involving a property interest must be analyzed under *Sandin v. Conner*, 515 U.S. 472 (1995). "A deprivation occasioned by prison conditions or regulations does not require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484).

The action taken in processing plaintiff's money order was pursuant to a clear policy statement, and plaintiff does not appear to contest the basis for the application of the policy, namely, that the instrument did not show the information required. Plaintiff filed at least one grievance concerning the money order, and prison personnel investigated the matter and provided him with an explanation. The events here do not rise to the "atypical and significant hardship" standard identified in *Sandin*, and the court concludes plaintiff was not denied due process under the facts established in the record.

Finally, the court finds no factual support for plaintiff's claims of racketeering, theft, and the like concerning the processing of his money order.

## Conclusion

For the reasons set forth, the court concludes defendants are entitled to summary judgment in this matter.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion for summary judgment (Doc. 55) is granted. This matter is dismissed and all relief is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED**.

Dated at Topeka, Kansas, this 15th day of September, 2010.

S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge